# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 18-0544** (Putnam County 17-MAP-16)

**Mark Halburn,**
**Defendant Below, Respondent**

**FILED**

**April 15, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mark Halburn, by counsel Christopher S. Butch, appeals the March 15, 2018, order of the Circuit Court of Putnam County that denied his motion to dismiss his misdemeanor conviction for violating a personal safety order. The State of West Virginia, by counsel Caleb A. Ellis, filed a response in support of the circuit court's order. On appeal, petitioner argues that the trial court erred in ruling that he failed to authenticate a proposed trial exhibit, and in denying his pre-trial, pro se "Emergency Motion for Immediate Dismissal."

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2016, Dr. Joseph H. Matusic, Jr., sought a personal safety order against petitioner in accordance with chapter 53, article 8 of the West Virginia Code. The Cabell County Magistrate Court held a hearing on the matter and granted Dr. Matusic a personal safety order that was effective through February 25, 2018. The order prohibited petitioner from having any contact with Dr. Matusic and from entering Dr. Matusic's residence or property. The order clearly listed Dr. Matusic's address as "2099 [X] Street,"[1] in Hurricane. Petitioner appealed the magistrate court's order to the circuit court, which denied relief.

Thereafter, on March 12, 2017, a brush fire occurred on Dr. Matusic's [X] Street property that damaged his barn. That same day, a reporter interviewed Dr. Matusic, took pictures of the scene, and reported on the fire. The next day, March 13, 2017, Dr. Matusic saw a car coming up his half-mile-long driveway. Dr. Matusic approached the car and realized petitioner was behind the wheel. Dr. Matusic told petitioner to leave his property, took pictures of petitioner's car on his property, and called 9-1-1 to report the encounter. Cpl. Shawn Johnson of the Putnam County

---

[1] Pursuant to Rule 40(e)(2) of the West Virginia Rules of Appellate Procedure we do not name the street on which Dr. Matusic lives and, instead, use an "X" in place of the street's name.

1

Sheriff's Department responded, took the complaint, and viewed Dr. Matusic's photographs. Thereafter, Cpl. Johnson prepared a criminal complaint alleging that petitioner violated Dr. Matusic's personal safety order, a misdemeanor crime under West Virginia Code § 53-8-11. A Putnam County magistrate found probable cause to charge petitioner and issued a warrant for his arrest.

Following his arrest, petitioner retained counsel and sought a jury trial in magistrate court. Petitioner also filed a pro se "Emergency Petition for Immediate Dismissal" that claimed the State violated (1) his First Amendment rights as a journalist and as the owner/operator of "PutnamNews.com"; and (2) his Fourteenth Amendment rights because the police failed to interview him or investigate the case before seeking a warrant for his arrest. The magistrate court denied the emergency petition.

At petitioner's August 31, 2017, jury trial, the State called Dr. Matusic who testified that he resided at 2099 [X] Street in Hurricane and that his mailbox, located at the nexus of his driveway and [X] Street, displayed the number "2099." Dr. Matusic stated those numbers were large and made of reflective material. Through Dr. Matusic, the State entered the photographs he took on March 13, 2017. One of those photographs displayed a sign along Dr. Matusic's driveway that read "Posted: Private Property . . . trespassing for any purpose is strictly forbidden. Violators will be prosecuted." Dr. Matusic testified that this same sign is located in three different spots along his lengthy driveway, and that he posted the first of the signs at the beginning of the driveway, just off [X] Street. The next photograph showed petitioner sitting in his car on Dr. Matusic's property. Dr. Matusic testified that he took this picture within sixty feet of his house and past all of the "Private Property" signs along the driveway. He further testified that he told petitioner to leave the property and then called 911. Following Dr. Matusic's testimony, the State rested its case.

Petitioner's first witness was Cpl. Johnson, the officer who prepared the criminal complaint alleging petitioner violated Dr. Matusic's personal safety order. Through Cpl. Johnson, petitioner's counsel attempted to enter a "screenshot"[2] purportedly taken from Channel 13 News's website, "www.WOWKTV.com." The alleged screenshot depicts a brief article allegedly published on March 12, 2017, by "Joseph Fitzwater, Assignment Editor" regarding a "large brush fire" on the "300 block of [X] Street in Hurricane." The State objected to the admission of the screenshot because petitioner failed to lay a proper foundation. Petitioner's counsel admitted that no one from the news station was in court to authenticate the screenshot. Although the magistrate never sustained the State's objection, petitioner's counsel moved onto other topics. Following Cpl. Johnson's testimony, petitioner asked for a continuance so he could attempt to obtain another screenshot of the Channel 13 News's website. The magistrate court denied that motion and said it would not grant a continuance in the middle of trial.

Petitioner then testified on his own behalf. Petitioner stated that (1) he runs a news website; (2) he read about the March 12, 2017, brush fire on Channel 13 News's website; (3) he

---

[2] Merriam-Webster.com defines a screenshot as "an image that shows the contents of a computer display." http://merriam-webster.com./dictionary/screenshot (last visited April 9, 2019).

called the fire chief to verify the address of the fire, and someone at the Fire Department verified a "300 [X] Street" address; (4) he got lost looking for that address; (5) he turned onto what he believed was a side street; (6) he did not see a mailbox with the number "2099" on it or any "Private Property" signs; (7) he realized he was on Dr. Matusic's property and immediately left the scene; and (8) he did not intend to violate Dr. Matusic's personal safety order.

The jury found petitioner guilty of violating Dr. Matusic's personal safety order. On October 12, 2017, the magistrate court sentenced petitioner to ninety days in jail. However, the magistrate suspended the sentence in lieu of two years of unsupervised probation. The magistrate also assessed $1,182.70 in costs against petitioner.

Petitioner appealed his conviction to the circuit court. Thereafter, petitioner filed a motion to dismiss his appeal under West Virginia Code § 50-5-13(c)(6) ("The review by the [circuit] court and a decision on appeal shall be complete within ninety days after the appeal is regularly placed upon the docket of the circuit court."). Following a hearing, the circuit court entered its May 25, 2018, "Order Denying Motion to Dismiss and Denying Appeal." With regard to the motion to dismiss, the circuit court found (1) the case was assigned to it on March 7, 2018, and less than ninety days had passed since that date; and, (2) although more than ninety days had passed since petitioner filed the appeal, any delay was due to the recusal of the judge initially assigned to the case. Accordingly, the circuit court concluded that any delay beyond ninety days was reasonable and excusable. The circuit court also noted that if it dismissed petitioner's appeal, the ruling he was appealing would remain in effect.

As for petitioner's appeal of the jury's verdict, the circuit court found petitioner's claim – that the magistrate court should not have granted Dr. Matusic a personal safety order – was previously appealed and denied. The circuit court also found that the magistrate court did not err when it denied petitioner's attempt to admit into evidence the "screenshot" allegedly taken from Channel 13 News's website because petitioner failed to lay a foundation for, or properly authenticate, the screenshot and the screenshot was not self-authenticating. Third, the circuit court found the magistrate court did not err in denying petitioner's pretrial motion to dismiss his case on Fourteenth Amendment grounds because, under Rule 4(a) of the West Virginia Rules of Criminal Procedure for Magistrate Courts, the complaint showed the existence of "probable cause to believe that an offense had been committed and that the defendant had committed it." Further, under Rule 4(b) of those same rules, "probable cause may be based upon hearsay evidence in whole or part."

Petitioner now appeals the circuit court's May 25, 2018, "Order Denying Motion to Dismiss and Denying Appeal." Petitioner raises two assignments of error. He first argues that the circuit court abused its discretion in finding the magistrate court did not err when it refused to allow petitioner to admit at trial the alleged "screenshot" of Channel 13 News's website on the ground that petitioner failed to lay a foundation for, or properly authenticate, the screenshot. Petitioner claims the screenshot was relevant because it showed the fire he was investigating occurred at "300 [X] Street" in Hurricane.

Petitioner first notes he testified on the record that he printed the screenshot from Channel 13 News's website and that the screenshot showed the name of "Joseph Fitzwater" who

3

he asserts is Channel 13's News's "assignment editor." Petitioner cites to Rule 901(b)(1) of the West Virginia Rules of Evidence for the proposition that a "witness with knowledge" can lawfully testify "that an item is what it is claimed to be" and thereby authenticate the item. Petitioner also argues that the screenshot had distinctive characteristics, such as its "appearance, contents, substance, internal patterns, or other distinctive characteristics . . . , [that] taken together with the all the circumstances[]" authenticated that screenshot. *See id.* 901(b)(4). Specifically, petitioner notes that the screenshot includes the date and address of the fire and the name of the assignment editor. Petitioner concedes that the screenshot did not include the words "Channel 13 News" or WOWK's logo, but highlights that the magistrate court denied his request for a brief recess to attempt to obtain a more complete version of the screenshot.

Petitioner also argues that the magistrate court erred in failing to find the screenshot was self-authenticating under Rule 902(6) of the West Virginia Rules of Evidence. That rule provides "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following: . . . Printed materials purporting to be newspapers or periodicals." *Id.* Petitioner further argues that it was not problematic that the screenshot was a "print out" because Rule of Evidence 1003 allows for the admissibility of duplicates "unless a genuine question is raised about the original's authenticity. . . ." Finally, petitioner cites Rule of Evidence 1008 that provides for "the admissibility of secondary evidence to prove contents of writings, recordings, or photographs . . . ."

We disagree with petitioner's assertions and conclude the circuit court did not err in finding the magistrate court properly excluded the screenshot as unauthenticated. Petitioner admits that "[t]o satisfy the requirement of authenticating . . . an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." W. Va. R. Evid. 901(a). "A trial court's ruling on authenticity of evidence under Rule 901(a) of the West Virginia Rules of Evidence will not be disturbed on appeal unless there has been an abuse of discretion." Syl. Pt. 12, *State v. Boyd*, 238 W. Va. 420, 796 S.E.2d 207 (2017).

We concur with the circuit court's finding that the magistrate court did not abuse its discretion in finding petitioner failed to authenticate the screenshot because he failed to introduce evidence demonstrating that the screenshot was what he claimed it to be. At trial, petitioner attempted to have Cpl. Johnson authenticate the screenshot, by questioning him as follows:

*Petitioner's Counsel*: Okay. Are you aware that Doctor Matusic allowed 13 News to show up on his property to take a photo of the fire[-]damaged barn?

*Cpl. Johnson*: I have heard that.

*Petitioner's Counsel*: Okay. Are you aware that 13 News published an address of the 300 block of [X] Street in their article?

*Cpl. Johnson*: Okay. If you say so. I mean, I'm assuming [the screenshot's] from Channel 13, but, I mean-

*Petitioner's Counsel*: All right.

4

*Cpl. Johnson*: –I'm not sure what they reported on.

*Petitioner's Counsel*: We'd like this as Defendant's Exhibit Number 1.

*The State*: Your Honor, I object to that as an exhibit. A proper foundation hasn't been laid for it.

Cpl. Johnson's testimony reveals that he did not know what 13 News reported on, if anything, and could make only assumptions about the screenshot. Likewise, Cpl. Johnson was clearly not a "witness with knowledge" of the purported news article in the screen shot pursuant to Rule of Evidence 901(b)(1). Thus, the magistrate correctly excluded the screenshot on the ground that petitioner failed to authenticate it.

We also reject petitioner's claim that the screenshot's distinctive characteristics (the date and address of the fire and the name of an alleged "assignment editor") self-authenticated it under Rule of Evidence 901(b)(4). Although the screenshot's characteristics suggest the article was about the subject fire, they do not suggest an association with Channel 13 News or any other news outlet.

Furthermore, we are not persuaded by petitioner's claim that the screenshot was self-authenticating under Rule of Evidence 902(6) as "[p]rinted materials purporting to be newspapers or periodicals." *See United States v. Vayner*, 769 F.3d 125, 129 n.4 (2d Cir. 2014) (observing that a printout purporting to be from a social media page was not self-authenticating; *United States Sec. & Exch. Comm'n v. Berrettini, et al.*, No. 10-cv-1614, 2015 WL 5159746, at *6 (N.D. Ill. Sept. 1, 2015) (finding a purported news articles that did not include URLs [a "www." or world wide web address] or other information indicating that the proffered article was not from a newspaper's website and, therefore, was not self-authenticating); *In re Homestore.com, Inc. Sec. Litig.*, 347 F.Supp.2d 769, 782 (C.D. Cal. 2004) ("Printouts from a web site do not bear the indicia of reliability demanded for other self-authenticating documents under Fed.R.Evid. 902."). We recognize that in *Kuba v. Sea World, Inc.*, 428 Fed. App'x 728, (9th Cir. 2011) the Ninth Circuit found that excerpts from the City of San Diego's website were self-authenticating. *Id.* at 732. However, the proponent of the excerpts provided the live hyperlinks to the website, and the court found that as a ".gov" domain, the URL was restricted by the General Services Administration and could not have been created by an unknown party. *Id.* Here, the screenshot does not list a URL or a domain name and does not include any mention of a news agency. Moreover, petitioner cites to no authority in support of his claim that the screenshot presented below is self-authenticating. Thus, we concur with the circuit court's finding that the magistrate court did not err in concluding the screenshot was not self-authenticating.

Even if petitioner had authenticated the screenshot and it was admitted into evidence, its probative value on the issue of whether petitioner violated Dr. Matusic's personal safety order is highly questionable. Petitioner testified that he could not find 300 [X] Street and turned onto what he believed was a "side street" that had no identification. Conversely, Dr. Matusic testified that his mailbox stood at the entrance to his driveway and, on the side of the mailbox, was the

number "2099" in large, reflective numbers. Dr. Matusic also testified to the three "Private Property" signs alongside his driveway. Further, Cpl. Johnson testified that Dr. Matusic's personal safety order clearly lists his address as "2099 [X] Street." In light of these facts, the magistrate court's denial of the screenshot's admission at trial did not undermine the fairness of the trial or affect petitioner's substantial rights. Accordingly, we find no error.

Petitioner's second and final assignment of error is that the circuit court abused its discretion in finding that the magistrate court did not err when it denied petitioner's pro se, pre-trial "Emergency Motion for Immediate Dismissal."

Petitioner argued in his "Emergency Motion for Immediate Dismissal" that the First Amendment of the United States Constitution and Article III, Section 7, of the West Virginia Constitution preclude the abridgment of the freedom of speech or of the press. Petitioner highlights that he testified at trial that his purpose for being on [X] Street on the day in question "was to take photos of the aftermath of a fire for PutnamCountyNews.com which [he] own[ed] and operate[d]." On appeal, petitioner argues that his arrest was clearly unconstitutional because he was arrested while serving as a member of the press.

Petitioner also argues that his arrest violated the Equal Protection Clause of the Fourteenth Amendment. In his "Emergency Motion for Immediate Dismissal," petitioner argued that the investigating officer did not interview him prior to obtaining a warrant for his arrest, but did interview Dr. Matusic. Thus, petitioner avers that the information Cpl. Johnson gave to the magistrate was unequal, biased, and a violation of his Fourteenth Amendment rights. Petitioner highlights that Cpl. Johnson admitted at trial that he heard a news agency had been on Dr. Matusic's property on the day of the fire and had taken pictures of the scene. Thus, petitioner presumes Cpl. Johnson knew that a newsworthy fire had occurred on Dr. Matusic's property and that petitioner sought to photograph the scene of the fire. Petitioner argues that despite these facts, Cpl. Johnson caused a warrant to be issued for his arrest without first interviewing him. Petitioner contends that if Cpl. Johnson had interviewed him prior to seeking the warrant, Cpl. Johnson would have learned that his actions bore no criminal intent.

We concur with the circuit court's finding that the magistrate court committed no reversible error in denying petitioner's motion to dismiss on First or Fourteenth Amendment grounds. The First Amendment does not give members of the press immunity from criminal prosecution for criminal acts. *See*, *e.g.*, *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (1991). Moreover, "laws that do not touch or concern speech or expressive activity in the first instance do not raise First Amendment concerns, even if they apply to the press, unless they impermissibly single out the media." *Adventure Commc'ns, Inc. v. Ky. Registry of Election Fin.*, 191 F.3d 429, 440 (4th Cir. 1999). Here, petitioner was convicted under chapter 53, article 8 of the West Virginia Code that provides for the issuance and enforcement of a personal safety order. The media is nowhere singled out in that section.

The magistrate court also did not err with regard to the Fourteenth Amendment. Rule 4(a) of the West Virginia Rules of Criminal Procedure for Magistrate Courts provides, in relevant part, that "[i]f it appears from the complaint . . . that there is probable cause to believe that an offense has been committed and that the defendant has committed it, a warrant for the arrest of

the defendant shall issue to any officer authorized by law to execute it." Rule 4(b) of those same rules provides that "[t]he finding of probable cause may be based upon hearsay evidence in whole or in part." Petitioner does not argue that Rule 4 violates the Fourteenth Amendment. Instead, he argues that Cpl. Johnson's failure to interview him prior to seeking a warrant for his arrest violated his equal protection rights. However, a law enforcement officer need not have evidence sufficient to overcome every possible trial defense in order to satisfy the probable cause standard. *See Reed v. Hill*, 235 W. Va. 1, 10, 770 S.E.2d 501, 510 (2015). Here, Cpl. Johnson had probable cause to arrest petitioner based on Dr. Matusic's statement and the pictures Dr. Matusic took of petitioner sitting in his car on Dr. Matusic's driveway.

For the foregoing reasons, we affirm the Circuit Court of Putnam County's May 25, 2018 "Order Denying Motion to Dismiss and Denying Appeal."

Affirmed.

**ISSUED:** April 15, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

7